United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

CORRINE BETH LEVIN,

Plaintiff,

v.

BANK OF AMERICA, N.A.,

Defendant.

Case No. 26-cv-05632-LB

**ORDER GRANTING IN PART AND DENYING MOTION TO DISMISS**

Re: ECF No. 7

## INTRODUCTION AND STATEMENT

The plaintiff is an elder who banks with the defendant, Bank of America, N.A. A scammer called her (using a spoofed caller ID that looked like a legitimate Bank of America number), pretended to be from the bank's fraud department, and induced her to disclose a one-time passcode. He then used the passcode to fraudulently transfer $58,635 from her account to a third party. The plaintiff reported the fraud the next day.[1] The bank denied her claim and, after the plaintiff filed a complaint with the Consumer Financial Protection Bureau, responded that its decision was unchanged.[2] The plaintiff then sued the bank for violations of (1) the Electronic Fund Transfers Act (EFTA), 15 U.S.C. § 1693, (2) California's Elder Abuse and Dependent Adult Civil

[1] Compl. – ECF No. 1 at 7 (¶ 9), 9 (¶¶ 16–19). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 9 (¶¶ 21–23).

Protection Act, Cal. Welf. & Inst. Code § 15600, and (3) California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200.[3]

Bank of America moves to dismiss the complaint primarily on the ground that the transfer did not violate the EFTA because the plaintiff authorized the transfer by "furnishing" the fraudster with the code.[4] Without an EFTA violation, there is no elder-abuse claim or UCL violation. The plaintiff counters that the fraud negates any authorization and plausibly pleads an EFTA claim, which in turn is a predicate for the elder-abuse and UCL claims.[5]

The court denies the motion to dismiss the EFTA and elder-abuse claims. The plaintiff did not authorize the transfer within the meaning of the EFTA and plausibly pleads an EFTA claim that also is a direct deprivation that is a viable predicate for the elder-abuse claim. The UCL claim is dismissed: the plaintiff disclaimed restitution and lacks standing to assert injunctive relief.[6]

## LEGAL STANDARD

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds for it. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Fact allegations are accepted as true and construed in the light most favorable to the plaintiff. *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018). A court must give leave to amend a complaint unless the deficiencies cannot be cured by the allegation of

---

[3] *Id.* at 6–17. The complaint (filed in state court) was removed based on diversity and federal-question jurisdiction. Notice of Removal – ECF No. 1 at 1–4. The parties do not dispute the court's diversity jurisdiction under 28 U.S.C. §§ 1332(a) or federal-question jurisdiction over the EFTA claim under 28 U.S.C. § 1331 (with supplemental jurisdiction over the state claims under 28 U.S.C. § 1367(a)).

[4] Mot. – ECF No. 7.

[5] Opp'n – ECF No. 14.

[6] The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c)(1). Consents – ECF Nos. 9, 11. The court held a hearing on August 27, 2026.

United States District Court
Northern District of California

other facts. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If there is no cognizable legal theory, amendment is futile. *Woods*, 831 F.3d at 1162.

## ANALYSIS

The parties dispute (1) whether the plaintiff "furnished" the code to the fraudster, thereby authorizing the transfer under the EFTA, (2) whether the EFTA violation supports a direct-taking claim for elder abuse, and (3) whether the plaintiff has plausibly pleaded standing, a remedy, or unlawful conduct under the UCL.[7] The plaintiff plausibly pleads EFTA and elder-abuse claims (the latter only on a direct-deprivation theory) and does not plausibly plead a UCL claim.

### 1. EFTA

The EFTA and its implementing regulation, Regulation E, 12 C.F.R. § 1005, protect consumers from unauthorized electronic fund transfers. *In re Bank of Am. Cal. Unemployment Benefits Litig.*, No. 21MD2992-GPC(MSB), 2024 WL 3174380, at *3 (S.D. Cal. June 25, 2024) (summarizing statutory and regulatory scheme). An "unauthorized electronic fund transfer" is "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693a(12). An "unauthorized electronic fund transfer" does not include

> any electronic fund transfer (A) initiated by a person other than the consumer who was furnished with the card, code, or other means of access to such consumer's account by such consumer, unless the consumer has notified the financial institution involved that transfers by such other person are no longer authorized, (B) initiated with fraudulent intent by the consumer or any person acting in concert with the consumer, or (C) which constitutes an error committed by a financial institution.

[7] Bank of America conceded that the transfer was "electronic" by not disputing the plaintiff's contention that she plausibly pleaded this fact. Mot. – ECF No. 7 at 9; Opp'n – ECF No. 14 at 11; Reply – ECF No. 15; *see Narang v. Gerber Life Ins. Co.*, No. 18-CV-04500-LHK, 2018 WL 6728004, at *4 (N.D. Cal. Dec. 21, 2018) (a failure to oppose an argument is a concession of it) (collecting cases)). Its contention (that the complaint does not allege an electronic transfer) in any event reads the complaint too grudgingly. Mot. – ECF No. 14 at 9 (characterizing the complaint as alleging a transfer but not that the transfer was "electronic" within the meaning of the statute). A transfer executed from an account by a remote third party authenticated with a one-time passcode plausibly "was initiated through an electronic terminal, telephonic instrument, or computer." 15 U.S.C. § 1693a(7).

*Id.* Regulation E's official interpretations provide that an unauthorized transfer "includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery," and that the "furnishing" exclusion addresses the consumer who "furnishes an access device and grants actual authority to make transfers to another person (such as a family member or coworker) who exceeds the authority given." 12 C.F.R. § 205, Supp. I at 2(m)(2)–(3) (Board of Governors' Official Interpretation of § 205.2(m)); *id.* § 1005, Supp. I at 2(m) (CFPB's Official Interpretation of § 1005.2(m)).[8]

Bank of America contends that the transfer initiated by the fraudster was not "unauthorized" under the EFTA because the plaintiff "furnished" the code.[9] *See* 15 U.S.C. § 1693a(12). The plaintiff responds that she cannot have authorized a transfer where the code was obtained through fraud, pointing to case law and the agency interpretations that recognize that the "furnished" exception does not apply where the third party gains access to the consumer's account through fraud.[10] Bank of America replies that (1) the plaintiff's reading is inconsistent with § 1693a(12) because the statute does not condition "furnished" on whether the consumer understood how the code would be used and (2) the cases cited by the plaintiff are distinguishable.[11]

The plaintiff plausibly alleges each element of an EFTA claim. The transfer was "initiated by a person other than the consumer." 15 U.S.C. § 1693a(12). The fraudster, not the plaintiff, used the passcode to initiate the transfer. The fraudster acted "without actual authority." *Id.* An imposter posing as the bank's fraud department has no authority to move a customer's money, and the plaintiff never agreed to that transfer. *Cf. Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018) (actual authority extends only to acts the principal specifically directs or generally

[8] The interpretations do not bind the court, but they carry persuasive weight given their consistency, their near-contemporaneity with the statute, and the agencies' expertise. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 402 (2024); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The plaintiff cited *Loper Bright* and *Skidmore* to support this argument. *See, e.g.*, Opp'n – ECF No. 14 at 8, 12–13. Bank of America did not dispute that persuasive weight and instead distinguished cases on their facts, as discussed in this section.

[9] Mot. – ECF No. 7 at 8–9.

[10] Opp'n – ECF No. 14 at 9–16.

[11] Reply – ECF No. 15 at 2.

authorizes); *Green v. Cap. One, N.A.*, 557 F. Supp. 3d 441, 448 (S.D.N.Y. 2021) (it is "self-evident" that an impostor posing as a bank representative lacks actual authority to initiate a transfer). And the plaintiff received no benefit: the money went to a third-party account. 15 U.S.C. § 1693a(12).

Bank of America's asserted "furnishing" exception does not defeat the claim, at least on the pleadings. Textually, the exclusion presupposes a consumer who knowingly gives another person the means of access for making the transfer, and it applies "unless the consumer has notified the financial institution . . . that transfers by such other person are no longer authorized." *Id.* § 1693(a)(12)(A). This presumes that the consumer is aware of that authorization and is able to revoke it. *Green*, 557 F. Supp. 3d at 448; *Garcia v. Navy Fed. Credit Union*, No. 23-cv-2017-MMA-BLM, 2025 WL 1100898, at *18 (S.D. Cal. Apr. 14, 2025). For example, it plainly applies where the consumer knowingly gave the code to someone (such as a family member or close friend) to make transfers from the consumer's account but later revoked that authorization. *See Green*, 557 F. Supp. 3d at 448.

But a consumer cannot revoke authority that she never granted to a stranger. *Id.* (an individual falsely posing as a customer-service representative does not have the "actual authority" to initiate a transfer, as required by § 1693a(12)). Also, the regulation "clearly distinguishes between access legitimately granted and later revoked . . . and access obtained by fraud." *Id.* (contrasting the agency interpretations providing for liability for authorized access to access gained through fraud or robbery). *Id.* Thus, courts have held that "authorization" obtained by fraud is unauthorized within the meaning of the EFTA. *Id.*; *Garcia*, 2025 WL 1100898, at *18; *Vitalis v. cPort Credit Union*, No. 2:25-cv-00217-LEW, 2026 WL 207156, at *5 (D. Me. Jan. 27, 2026) (transfers initiated by a fraudster through fraudulently obtained remote access were unauthorized; the plaintiff's own cash withdrawals and deposits were not).

Bank of America distinguishes *Green*, *Garcia*, and *Vitalis* on their facts: the fraudsters there obtained access themselves, not via the consumer's providing a real-time transaction code that enabled the theft. In *Green*, the fraudster impersonated a customer-service representative to obtain account information later used to siphon funds. 557 F. Supp. 3d at 444–45. In *Garcia*, the fraudster used information obtained through a phone scam to take out a loan and transfer funds. 2025 WL

1100898, at *1. In *Vitalis*, the fraudster gained access by inducing the plaintiff to install remote-access software. 2026 WL 207156, at *5 (distinguishing that fraud from the plaintiff's own cash withdrawals and ATM deposits). But like the transfers in *Green*, *Garcia*, and *Vitalis*, the fraudulent transfer here (at least as pleaded) was not authorized within the meaning of the EFTA. A contrary reading would make a transfer enabled by hacked or pickpocketed credentials unauthorized but one enabled by trickery or gunpoint robbery authorized. *Garcia*, 2025 WL 1100898, at *18. The reading of the statute also accords with the plain meaning of "furnish": to supply something for a particular purpose. *Furnish*, Black's Law Dictionary (5th ed. 1979). As alleged, the plaintiff supplied the passcode for a security check, not to enable someone to transfer her money fraudulently.

Perhaps the record will ultimately support a theory that there was something about the plaintiff's provision of the one-time passcode that was functionally equivalent to an authorization. But that depends on facts outside the pleadings. On a motion to dismiss, all fact inferences are drawn in the plaintiff's favor. *Interpipe*, 898 F.3d at 886–87. As alleged, the caller extracted the code under the guise of fraud prevention, and the perpetrator (not the plaintiff) initiated the transfer. This plausibly alleges an unauthorized transfer.

The bank's cited cases do not compel a contrary result. In each, the consumer initiated the transfer (typically a Zelle payment to a scammer), not the fraudster, so the transfer failed § 1693a(12)'s threshold requirement that it be initiated by a person other than the consumer. *Wilkins v. Navy Fed. Credit Union*, No. 22-2916 (SDW) (ESK), 2023 WL 239976, at *19 (D.N.J. Jan. 18, 2023); *Tristan v. Bank of Am.*, No. SACV 22-01183-DOC (ADSx), 2023 WL 4417271, at *10 (C.D. Cal. June 28, 2023); *Sanchez v. Navy Fed. Credit Union*, No. EDCV 23-285 JGB (KKx), 2023 WL 6370235, at *21–23 (C.D. Cal. Aug. 14, 2023) (distinguishing *Green* because there the scammer, not the consumer, initiated the transfer); *Holmes v. Cap. One, N.A.*, No. 3:22-cv-0823 (GTS/TWD), 2023 WL 6318883, at *8 (N.D.N.Y. Sep. 28, 2023); *Cook v. USAA Fed. Sav. Bank*, No. 8:22-cv-01469-PX, 2023 WL 3949735, at *2 (D. Md. June 12, 2023). These cases turned on who initiated the transfer. In each it was the plaintiff. Here, the plaintiff alleges that it was the fraudster.

In sum, the plaintiff plausibly pleaded an EFTA claim.

United States District Court
Northern District of California

**2. Elder Abuse**

Elder financial abuse occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder" (a direct taking) or assists in doing so "for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1)–(2); *York v. Bank of Am.*, No. 14-cv-02471-RS, 2016 WL 392928, at *4 (N.D. Cal. Feb. 2, 2016). "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult" sixty-five years of age or over. Cal. Welf. & Inst. Code §§ 15610.27, .30(b). "Thus, a plaintiff must aver (1) that the defendant took, secreted, appropriated or retained real or personal property, (2) of an elder, (3) for a wrongful use or with intent to defraud, or both." *York*, 2016 WL 392928, at *4 (citing *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 528 (2012)). A taking occurs "when an elder . . . is deprived of any property right, including by means of an agreement." Cal. Welf. & Inst. Code § 15610.30(c).

The plaintiff characterizes the claim as a direct-taking claim, arguing that Bank of America's refusal to reimburse her is the deprivation of a property right.[12] Bank of America responds that the direct-taking claim fails because the plaintiff assumes an EFTA violation, which it disputes. It contends that because it did not receive the plaintiff's money, the plaintiff cannot allege a direct taking and can plead only an assisting claim, and that claim fails because it lacked actual knowledge that the plaintiff was being scammed.[13] Because the plaintiff plausibly pleaded an EFTA violation, and Bank of America does not dispute that a valid EFTA claim is a property right that can support an elder-abuse claim on a direct-deprivation theory, the claim stands (but only on that theory).

Preliminarily, the court dismisses any claim predicated on an assisting theory. When a bank provides ordinary services that effectuate financial abuse by a third party, the bank assists the abuse — and is liable under § 15610.30(a)(2) — only if it had actual knowledge of the third party's wrongful conduct (and constructive knowledge does not suffice). *Das v. Bank of Am., N.A.*,

[12] Opp'n – ECF No. 14 at 17–20.

[13] Reply – ECF No. 15 at 4–5.

186 Cal. App. 4th 727, 744–45 (2009). The plaintiff does not allege that the bank knew of the scam at the time of the transfer, and she disclaims any assisting theory.[14] To the extent that the claim could be read to assert an assisting claim (or a taking predicated on the bank's processing of the fraudster's transfer), it is dismissed. Because the plaintiff disclaims the assisting theory, the dismissal is with prejudice.

The plaintiff's actual theory is different: the bank itself deprived her of a property right (her statutory entitlement to reimbursement under the EFTA) by wrongfully denying her claim.[15] For that direct theory, the aiding-and-abetting standard does not apply. The question is whether the bank took or retained her property for a "wrongful use," that is, whether it "knew or should have known" that its own conduct was likely to harm her. Cal. Welf. & Inst. Code § 15610.30(a)(1), (b)(1); *Bortz v. JP Morgan Chase Bank, N.A.*, No. 21-CV-618 TWR (DEB), 2022 WL 1489832, at *4 (S.D. Cal. 2022) (analyzing the plaintiff's direct claim — that the bank wrongfully retained wire fees — under this standard, and requiring actual knowledge only for the assisting claim); *Paslay v. State Farm Gen. Ins. Co.*, 248 Cal. App. 4th 639, 657–58 (2016) (a party may commit financial elder abuse by withholding funds to which an elder is entitled under contract; "wrongful use" requires that the defendant knew, or reasonably should have been aware, that it was engaging in a harmful breach).

The theory is cognizable. The Act "broadly defines" financial abuse to include deprivation of "any property right." Property rights are broadly defined under state law. *Cameron v. Las Orchidas Props., LLC*, 82 Cal. App. 5th 481, 508–09 (2022) (the statutory right to re-rent an apartment under the Ellis Act is a property right). Statutory and contractual entitlements to money are property rights. *Paslay*, 248 Cal. App. 4th at 657–58 (withheld insurance benefits); *Martinez v. Sunnova Energy Corp.*, No. EDCV 23-2233-MWF (BFMx), 2024 WL 3005903, at *6 (C.D. Cal. June 13, 2024) (money a company retains although the consumer is entitled to it); *In re Feiler*, 218 F.3d 948, 955 (9th Cir. 2000) (tax refunds). The EFTA recredit is of the same character: a

[14] Opp'n – ECF No. 14 at 19–20.

[15] *Id.* at 16–20.

statutory entitlement to payment of a determinate sum on specified conditions. 15 U.S.C. §§ 1693f(b), 1693g(a).[16]

The bank's responses do not carry the day, at least on the pleadings.[17] First, it contends that there is no direct taking because it "did not receive" the plaintiff's money; the fraudsters did. But the property right that the plaintiff invokes is not the stolen funds; it is the recredit that the bank allegedly owes and retains. The statute reaches a defendant that "retains" an elder's property and defines a taking as the deprivation of "any property right"; it does not require that the defendant pocket the proceeds of the underlying fraud. Cal. Welf. & Inst. Code § 15610.30(a)(1), (c). Second, the bank contends that the theory is circular because the claimed property right presupposes an EFTA violation. The theory is derivative, not circular: the complaint plausibly alleges the predicate — an unauthorized transfer that triggered the recrediting obligation — and so plausibly alleges a property right and its deprivation. (If the EFTA claim ultimately fails, this theory fails with it.) Finally, "wrongful use" is plausibly alleged: denying an elder a nearly $60,000 recredit (that the statute allegedly required) is conduct that the bank knew or should have known was likely to harm her. *Id.* § 15610.30(b)(1); *Martinez*, 2024 WL 3005903, at *6 (bad faith or fraud is not required). Whether the denial instead reflected a bona fide dispute — which could defeat "wrongful use" on a fuller record, *see Paslay*, 248 Cal. App. 4th at 657–60 — is not a question the court can resolve on a motion to dismiss.

The issue is close. First, the asserted "property right" is nothing more than the plaintiff's contested EFTA claim. *Cameron*, *Paslay*, and *Martinez* involved established entitlements: a statutory re-rental right, policy benefits, amounts concededly collected. Here, whether the bank owes anything is the very question the EFTA claim litigates, and treating every disputed claim denial as a "taking" would convert ordinary claims-handling disputes into elder abuse (with the Act's enhanced remedies) whenever the customer is an elder. Nothing in § 15610.30 suggests that

---

[16] The EFTA preempts only inconsistent state laws and expressly preserves state laws that give consumers greater protection than the EFTA does. 15 U.S.C. § 1693q. The bank does not argue preemption.

[17] Mot. – ECF No. 7 at 9–10; Reply – ECF No. 15 at 4–5.

United States District Court
Northern District of California

result. Second, even accepting the plaintiff's premise, *Paslay* requires more than breach: the defendant must know, or have reason to know, that its withholding is a harmful breach, meaning, that it lacks a proper basis. 248 Cal. App. 4th at 657–60. The complaint alleges that the bank investigated twice and adhered to a legal position that (potentially) authority supports, which could describe a bona fide dispute, not a knowing or reckless wrongful withholding. Third, the elder-abuse claim adds nothing to the EFTA claim except heightened remedies, and the court arguably should require factual allegations that the denial itself was wrongful in the *Paslay* sense (a sham investigation or a denial the bank knew was baseless) before permitting an elder-abuse claim that arguably is only an overlay to the EFTA claim. On this reasoning, the court considered granting the motion as to claim two, with leave to amend.

But at the pleading stage and on this argument, the court concludes that the claim is plausibly pleaded and the viability of the claim is better addressed on a fuller record at summary judgment. The claim proceeds on the direct-deprivation theory.

**3. UCL**

The UCL prohibits business practices that are unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200; *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003). Each prong of the UCL provides "a separate and distinct theory of liability." *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). A private plaintiff has standing only if she "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322–23 (2011). UCL remedies are limited to restitution and injunctive relief. Damages are not recoverable. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). In federal court, a plaintiff seeking equitable relief must establish that she lacks an adequate remedy at law, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), and must satisfy Article III, which for injunctive relief requires a sufficient likelihood that she will again be wronged in a similar way, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–71 (9th Cir. 2018).

Bank of America asserts that the plaintiff has not plausibly pleaded a UCL claim because (1) she has not pleaded a causal link between the harm and conduct by Bank of America, (2) there is no available remedy (the harm she identified is too speculative to support injunctive relief), and (3) she has not alleged any unlawful conduct.[18] The plaintiff responds that Bank of America's conduct was unlawful conduct in violation of the EFTA (causing her harm) and she seeks injunctive relief to prevent Bank of America's future wrongful denial of reimbursement.[19]

Two of the bank's arguments fail. The plaintiff has statutory standing: the lost money she alleges is the recredit that the bank allegedly owed and withheld, which is an economic injury caused by the bank's conduct, not (as the bank frames it) only by the fraudsters' conduct. *Kwikset*, 51 Cal. 4th at 323 (economic injury includes being "deprived of money or property to which [the plaintiff] has a cognizable claim"). And the complaint identifies the challenged practice with the required specificity: the bank's allegedly EFTA non-compliant investigation and the denial of her reimbursement claim. *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002); *see Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175-LB, 2015 WL 6123054, at *6 (N.D. Cal. Oct. 19, 2015) (generally, a violation of almost any law can serve as a basis for a UCL claim).

The claim nonetheless fails. The plaintiff disclaims restitution and seeks only injunctive relief that is private injunctive relief and attorney's fees under Cal. Civ. Proc. Code § 1021.5, which is a fee-shifting provision, not a freestanding remedy.[20] For the injunction, she must plausibly allege a sufficient likelihood of future injury, and she has not. *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 926 (N.D. Cal. 2012). Her theory — that she must either close her account that she wants to keep or remain subject to the bank's claims-handling policies — depends on a speculative chain: she will again be targeted by a fraudster, again have her credentials stolen, and again be wrongfully denied reimbursement. A single denial of a claim does not plausibly allege a future harm. *Id. Davidson* does not compel a contrary result: there, the plaintiff confronted the

[18] Mot. – ECF No. 7 at 13–14.

[19] Opp'n – ECF No. 14 at 21–22 & n.19.

[20] *Id.* at 21.

United States District Court
Northern District of California

same allegedly false label for "flushable" wipes every time she considered buying the product. 889 F.3d at 969–71. Here, the plaintiff's harm is only the allegedly wrongful denial of a past claim, not an ongoing bank policy that presently injures her. The alleged future crime thus requires an intervening third-party crime. Finally, the asserted injury is the withheld recredit itself. Damages under the EFTA, 15 U.S.C. § 1693m, are adequate, which independently bars equitable relief for that harm. *Sonner*, 971 F.3d at 844.

It is possible that the plaintiff might plead facts showing an ongoing policy and a non-speculative risk of recurrence. The dismissal thus is without prejudice and with leave to amend. *Cook*, 911 F.2d at 247. Also, a dismissal for lack of Article III standing is without prejudice to pursuing any claims that are available in state court. *Penning v. Albertsons Cos.*, No. 3:26-cv-04340-JSC, 2026 WL 2325179, at *1–2 (N.D. Cal. Aug. 11, 2026) (case removed to federal court must be remanded if there is no subject-matter jurisdiction, including Article III standing).[21]

**CONCLUSION**

The motion to dismiss is denied as to the plaintiff's EFTA and elder-abuse claims: the plaintiff did not authorize the transfer by giving the fraudster a code and thus plausibly pleads an EFTA claim, which in turn is a predicate for the elder-abuse claim only on a direct-deprivation theory. The UCL claim is dismissed because the plaintiff disclaimed restitution and lacks standing to assert injunctive relief. That dismissal is without prejudice. The timing of any amendment will be addressed at the initial case-management conference through a deadline to amend the pleadings.

This order resolves ECF No. 7.

**IT IS SO ORDERED.**

Dated: September 3, 2026



LAUREL BEELER
United States Magistrate Judge

[21] The plaintiff raised this point at the August 27 hearing. The defendant did not dispute it.